## In re Anonymous No. 12 D.B. 80

Disciplinary Board Docket no. 12 D.B. 80.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

HAMMERMAN, *Board Member*—Pursuant to Pa.R.D.E. 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

The Office of Disciplinary Counsel filed a petition for discipline against [ ], Esq. (respondent) on March 26, 1980. The petition alleged several violations of the Disciplinary Rules in connection with the [A] Estate, specifically:

(a) D.R. 1-102(A)(6)—A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law.

(b) D.R. 6-101(A)(3)—A lawyer shall not neglect a legal matter entrusted to him.

(c) D.R. 7-101(A)(1)—A lawyer shall not fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules.

(d) D.R. 7-101(A)(2)—A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services.

(e) D.R. 7-101(A)(3)—A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

No answer was filed and the matter was referred to hearing committee [ ]. A hearing was held on July 10, 1980. [Respondent] was unrepresented and the hearing was adjourned until July 24, 1980. Thereafter, hearings were held on September 24, 1980 and December 19, 1980. The report of the

hearing committee was filed on May 8, 1981 in which the committee found violations of D.R. 6-101(A)(3), D.R. 7-101(A)(1), D.R. 7-101(A)(2) and D.R. 7-101(A)(3) of the Disciplinary Rules and recommended that respondent be given an informal admonition. Petitioner filed a brief on exceptions to the committee report on May 28, 1981 and a panel of the board was designated to hear oral arguments on July 30, 1981, in [   ], Pa. The panel consisted of Robert S. Daniels, Mary Bell Hammerman and John M. Elliott.

## STATEMENT OF FACTS

(a) Charge—[A]

Respondent is an attorney, licensed to practice law in Pennsylvania for 22 years. Following the death of [A] on July 21, 1972, respondent was retained by [   ], decedent's son and executor of the estate of [A], to represent decedent's estate, which responsibilities included the accumulation of the estate assets and the closing of the estate.

Respondent was a long-time family friend and acquaintance of [A's son] and had previously represented [A's son] in several other matters. [A's son] paid respondent a $5,000 fee for his legal services in connection with the estate, as reflected by checks dated November 15, 1972 and December 29, 1972. At respondent's suggestion, a checking account was opened in the name of decedent's estate as the repository for the funds and settlement of the estate. In December 1972, respondent and [A's son] had several discussions about the distribution of funds of the estate and the benefits of [A's son's] taking an Executor's fee. At a meeting held on December 29, 1972, [A's son] signed a blank tax form and was told by respondent that the figures would be typed in and the form sent off.

At the above mentioned meeting, after respondent had determined the tax liability on the [A] estate, [A's son] also wrote out two checks: check no. 26 in the amount of $24,372.86, payable to the Internal Revenue Service (IRS) in payment of the Federal estate tax; check no. 27, in the amount of $1,044.27, payable to the register of wills in payment of the Pennsylvania inheritance tax. [A's son] gave respondent checks no. 26 and no. 27 and was told by respondent that they would be attached to the completed tax form and sent to the IRS and register of wills. At the meeting of December 29, 1972, respondent did not indicate that the estate, which involved only personal property, had problems and commented on the simplicity of it. [A's son] never received a copy of the complete tax form. There were sufficient funds in the checking account opened in the name of the estate to pay checks no. 26 and no. 27 which had not cleared.

After December 29, 1972, [A's son] called respondent several times to inquire as to why the checks had not cleared. Respondent would respond that there was no problem, that the return had been filed and that [A's son] should be patient.

In February 1974, after discussing the matter with respondent, [A's son] wrote out a second set of checks, no. 36 and no. 37, which were dated February 27, 1974 and payable to the IRS and the register of wills, respectively, in essentially the same amounts as checks no. 26 and no. 27. At no time between December 29, 1972 and February 1974, did respondent inform [A's son] that it was [A's son's] responsibility to file the tax returns with respect to the [A] estate. At no time between December 1972 and February 1974 did respondent inform [A's son] that respondent was waiting for any information from [A's son].

[A's son] stopped payment on checks no. 26 and

no. 27 and hand-delivered checks no. 36 and no. 37, accompanied by a cover letter, to respondent's office. Respondent received notice of stop-payment orders and the second set of checks issued by [A's son] in payment of the outstanding federal estate tax and Pennsylvania inheritance tax. Respondent did not send the second set of checks or prepare new returns to be sent to either the state or federal tax authorities. In middle to late 1974, respondent tore up the checks following a stormy telephone conversation with [A's son]. Respondent never informed [A's son] in subsequent telephone conversations that he had torn up the checks. Despite increasing arguments with [A's son] during 1973, and 1974, concerning the [A] estate and other matters, respondent did not formally withdraw as counsel for the [A] estate.

Respondent did not keep copies of the second set of checks which he had destroyed. Respondent had no authority to destroy checks no. 36 and no. 37. By letter dated October 2, 1975, the Pennsylvania Department of Revenue notified [A's son] that it had not received the inheritance tax returns or payment of the outstanding taxes owed with respect to decedent's estate. Upon receipt of the letter from the Department of Revenue, [A's son] telephoned respondent who told [A's son] that he couldn't understand what had happened and would look into the matter immediately. Respondent said nothing about what he had done with the second set of checks. Following his telephone conversation with respondent concerning the October 1975 letter, [A's son] continued to call respondent to inquire about the second set of checks. Prior to destroying the second set of checks, respondent made a few calls to the Inheritance Tax Office in Media, Delaware County, but never wrote to either the state or fed-

eral tax authorities to determine what had happened to the tax returns or the first set of checks and never discussed with the IRS the penalty and interest that was accruing.

By letter dated January 31, 1976, the Pennsylvania Department of Revenue notified [A's son] for the second time that it had not received the inheritance tax return or a payment of inheritance taxes with respect to decedent's estate. After receiving the letter from the Pennsylvania Department of Revenue, [A's son] called respondent's office to arrange for a time when he could pick up respondent's file on decedent's estate. The file which [A's son] picked up at respondent's office was incomplete.

(b)  Charge—[B]

In Spring 1976, [A's son]retained [C], a practicing attorney in Pennsylvania, to represent him and decedent's estate. By letter dated August 2, 1976, the IRS notified [A's son] that the estate owed a penalty of $9,891.13 and interest of $4,921.44 on account of the delinquency in payment of the Federal estate tax on decedent's case. In May 1976, [C] filed a report, appraisal and inventory with respect to decedent's estate, based upon the documents contained in respondent's file, to stop the running of interest with respect to Pa. Inheritance Tax. By fall 1976, [A's son] had paid the outstanding Federal estate tax and accrued interest. [C] contested the imposition of the penalty and such penalty was eventually waived by the IRS.

On account of respondent's failure to respond to [C's] letters and calls, [C] filed a praecipe for a summons in trespass/assumpsit on behalf of [A's son] and decedent's estate and against respondent in December 1976. A complaint in trespass/assumpsit (Complaint) against respondent was subsequently filed in the [  ] County Court of

Common Pleas in May 1977, to which respondent filed an answer. [C] filed a motion to permit the inspection and copying of respondent's files to which respondent filed no response. In December 1977, the Court of Common Pleas of [ ] County imposed sanctions in the nature of striking various paragraphs of respondent's answers to [C's] complaint against him which effectively precluded respondent from asserting a defense to several allegations in the complaint. Respondent did not respond to notification of entry of judgment on the complaint.

In March 1978, [C] served [B], executrix of an estate represented by respondent, with a writ of execution and interrogatories for the purpose of determining the amount of counsel fees paid to and owed respondent. Respondent told [B] that he would handle the writ of execution and interrogatories served on her. Respondent's failure to file timely answers to [C's] interrogatories enabled [C] to enter judgment against [B] in the amount of $11,235.18 on May 9, 1978.

[A's son] has received no payments or offers to make payments from respondent with respect to the items of loss incurred by decedent's estate subsequent to the parties' disagreements in 1974 and 1975.

### III. DISCUSSION

The board agrees with the conclusion of the hearing committee that there is little substantial dispute as to the material facts of this case. The board affirms the committee's findings of facts and conclusions of law, but disagrees with the discipline it recommended to be imposed. From the charges that were considered it is readily apparent that respondent deliberately neglected a matter entrusted

to him. He also misled his client as to the progress of the matter and failed to inform him that he had destroyed the second set of checks. Respondent was also habitually unavailable to his client and failed to maintain communications with him.

Respondent exhibited the same pattern at oral argument as he did during the hearings. He appeared without counsel and proceeded to harangue the panel on the injustices he has endured over the past years with respect to this estate matter. In view of the fact that respondent never withdrew his representation in this matter and did not turn over a complete file to another attorney, one can only question the lack of professional conduct of this attorney. Although he has been practicing for more than twenty years and has never been charged with any other misconduct, it was the opinion of a majority of the panel that a public censure was the appropriate discipline of this respondent. The board agrees with the conclusion of the hearing committee that respondent has in fact violated the following Disciplinary Rules: D.R. 6-101(A)(3); D.R. 7-101(A)(1); D.R. 7-101(A)(2); and D.R. 7-101(A)(3). The hearing committee found no violation of D.R. 1-102(A)(6).

## IV. RECOMMENDATION

The board respectfully recommends that respondent, [   ], appear before your honorable court and submit to a Public Censure.

Messrs. Daniels, Schiavo and McDonnell dissent and would impose a Private Reprimand.

Mrs. Neuman and Mr. Elliott did not participate in the adjudication.

## ORDER

O'BRIEN, *C.J.*, And now, September 25, 1981,

the report and recommendation of the Disciplinary Board dated August 19, 1981, are accepted; and it is ordered that [Respondent] be subjected to public censure by the Supreme Court at the session of court commencing October 19, 1981, in [    ].

Mr. Justice Larsen and Mr. Justice Kauffman would suspend for one year.